## ROGERS v. BRIX BROS. LOGGING CO.

(Circuit Court of Appeals, Ninth Circuit.   March 5, 1923.)

No. 3923.

1. **Creditors' suit ⬳46—Evidence held to show award was reimbursement for loss under debtor's contract.**

In a suit to recover from defendant a balance due on plaintiff's judgment against a corporation whose property and business had been taken over by defendant, evidence *held* to show that an award of reimbursement made by the government to defendant was principally based upon the contract between the corporation and the United States, the contract with defendant being regarded as a mere continuation of the former contract, so that plaintiff was entitled to have its judgment satisfied out of that fund.

2. **Creditors' suit ⬳27—Debtor corporation is not necessary party to suit to subject fund to which it makes no claim.**

In a suit to enforce payment of a judgment against a corporation out of a fund in defendant's hands, where the corporation made no claim to

the fund or award, it was not. a necessary or indispensable party to the suit, since it had no claims to assert and no rights to defend therein.

Appeal from the District Court of the United States for the District of Oregon; Robert S. Bean, Judge.

Suit in equity by the Brix Bros. Logging Company against Clem Rogers. to recover the balance due on a judgment against the Oregon Pacific Mill & Lumber Company. Decree for plaintiff, and defendant appeals. Affirmed.

In the latter part of 1917 one Corbaley procured an option from the Clatsop Lumber Company of Astoria, Or., to purchase its sawmill and timber; also a proposal in the form of a letter from the War Department agreeing on behalf of the United States to purchase the entire product of aircraft spruce from the mill at the agreed price of $105 per 1,000 feet. Thereafter Corbaley and his associates formed a corporation under the laws of the state of Nevada, known as the Oregon Pacific Mill & Lumber Company, to take over these properties and contracts. On the 26th day of December, 1917, the United States entered into a formal contract with the corporation thus formed for the purchase of 10,000,000 feet of spruce lumber to be delivered in quantities of not less than 560,000 feet during each month, commencing with the month of January, 1918, at the agreed price of $105 per 1,000 feet. The original plan of the corporation was to obtain advances from the government to pay the purchase price of the property and finance the operations of the company. In order to obtain these advances it became necessary to indemnify a surety company which would in turn agree to indemnify the government for the advances thus made. To that end the corporation entered into a contract with Rogers, the defendant in the court below. Under the terms of that contract Rogers agreed to loan or advance securities to the corporation to the value of $300,000. The corporation in turn transferred and assigned to Rogers all of its property, including the contracts with the United States, and appointed Rogers its general manager and treasurer, with full power and authority to exercise all the rights and powers of the corporation, to the same extent that such rights and powers might be exercised by the corporation itself, its directors, members, stockholders, officers, or attorneys, subject to the proviso that Rogers should not interfere with the practical management and operation of the mill, so long as all payments due under the contract were made at the time and in the manner specified, and all other terms of the contract were kept and performed; and so long as the mill was conducted in the orderly course of such industries, to wit, buying logs, manufacturing them into lumber and lumber products, and selling the same at prices satisfactory to Rogers. Rogers was to be paid $250 per month, and repaid all advances made by him at the rate of $20,000 per month, with interest at the rate of 8 per cent. per annum. He was likewise to be paid 20 per cent. of all net profits, and was made the pledgee of 1,250 shares, or more than a majority of the capital stock. It was finally agreed that in case of any default Rogers was entitled to own, hold, and transfer the property as his own, free and clear of any right, claim, or demand of any nature on the part of the corporation. Later, in February, 1918, it became known·that the government intended to charge interest on all advances made at the rate of 8 per cent. per annum. Rogers by reason thereof advanced the sum of $283,500 to repay the advances theretofore made by the government, and thereafter financed the corporation himself. The corporation continued to operate at a loss under the management of Corbaley until September 1, 1918, when the entire property, together with its management, was turned over to Rogers. This transfer was later confirmed by the directors and stockholders of the corporation. The contract of December 22 between the government and the corporation was canceled as of the date of October 8th, and Rogers immediately entered into a new contract with the government, on the same terms and conditions for the undelivered portion of the lumber called for by the original contract. Rogers continued thereafter to

operate the mill in his own right until his contract was canceled on November 11th, upon the signing of the Armistice. Thereafter Rogers presented a claim for reimbursement to the contract board in his own behalf, under the last-named contract, and as assignee of the corporation under the first contract, and was awarded the sum of $60,000. While the corporation was under the management of Corbaley, in August, 1918, Brix Bros. Logging Company, the plaintiff in the court below, sold and delivered logs to the corporation to the value of $15,136.39. Brix Bros. thereafter recovered judgment against the corporation in a state court of Oregon for that amount, and upon execution realized the sum of $1,133.46. Thereafter the present suit was brought against Rogers to recover the balance due upon the judgment. From a decree in favor of the plaintiff the present appeal is prosecuted.

Erskine Wood and M. M. Matthiessen, both of Portland, Or., for appellant.

Carey & Kerr and Omar C. Spencer, all of Portland, Or., and G. C. Fulton, of Astoria, Or., for appellee.

Before GILBERT, MORROW, and RUDKIN, Circuit Judges.

RUDKIN, Circuit Judge (after stating the facts as above). [1] The decision of the court below turned entirely upon the award of $60,000 made by the government by way of reimbursement for the cancellation of the contracts for the purchase of spruce lumber. On this question the court found that the contract of October 8, 1918, with the appellant was a mere substitution for or continuation of the original contract of December 22, 1917, with the Oregon Pacific Mill & Lumber Company, and that the reimbursement was made on account of the earlier contract. This finding is supported by the testimony. The claim for reimbursement was made by the appellant in his own right, and as assignee of the Oregon Pacific Mill & Lumber Company. It was based largely upon the fact that the Oregon Pacific Mill & Lumber Company had purchased the mill and timber for the sole and only purpose of supplying the government with aircraft spruce in a time of urgent need. The principal evidence submitted in support of the claim was a report of certified accountants taken from the books and records of the Oregon Pacific Mill & Lumber Company. The basis of the final allowance by the contract board was: Original investment, $278,000; improvements, $60,000—making a total of $338,000, 56 per cent. of which should have been written off because the contract should have been completed to that extent at the time of its cancellation, leaving a balance of $148,720. From this was deducted the salvage value of $100,000, leaving a net loss of $48,720. This amount was later increased to $60,000. It thus appears that the two contracts were treated as one, and that the allowance was based largely, if not entirely, upon the equities in favor of the Oregon Pacific Mill & Lumber Company, as that company had made the original investment and the improvements referred to. Indeed, it is difficult to see how the award could have been materially different if the second contract had not existed at all. It is no answer to this to say that no allowance was made on account of the canceled contract, because the record shows the contrary, and, as stated by the court below, the second contract re-

sulted· from a ' change in the ownership of the mill and timber and was a mere continuation of the first.

[2] But, conceding all this, the appellant earnestly insists that this is a, suit by·a creditor to recover funds misappropriated by a director or other officer of a corporation, or a suit to set aside a fraudulent conveyance made by a corporation, and that in either case the corporation is a necessary and indispensable party defendant.

If the premise is sound, the conclusion might follow, but in its final analysis this suit does not belong to either class. While a fraudulent transfer is charged in the complaint, the facts disclosed at the hearing show that the appellant has received from the government the sum of $60,000, which he claims as an award to him individually on account of the cancellation of a personal contract with the government; whereas the respondent claims that the award was made on account of the cancellation of a contract with the Oregon ·Pacific Mill & Lumber Company.: If there were a controversy between the corporation and the appellant over the ownership or a division of this fund, it might well be urged that the corporation was a necessary party to a complete determination of that issue; but the respondent has already recovered a judgment against the corporation, and the appellant frankly concedes that the corporation now makes no claim to the fund or award. If the corporation has no claims to assert and no rights to defend, it would be sacrificing substance to mere form to hold that it is a necessary or indispensable party to this suit. A proceeding of this kind is in essence an equitable execution comparable to proceedings supplemental to execution. Pierce v. United States, 255 U. S. 398, 41 Sup. Ct. 365, 65 L. Ed. 697. As a general rule, we perceive no reason why a fund thus held could not be reached by the ordinary process of execution or garnishment, and, if so, why should it be necessary to bring in additional parties, where a suit in equity, as distinguished· from ordinary legal process, is resorted to.

We are of opinion, therefore, that neither the corporation nor its creditors were necessary parties to the present suit, and that the decree of the court below should be in all things affirmed; and it is so ordered.